Kyann C. Kalin (SBN 209030)
Kyann@stutheitkalin.com
**STUTHEIT KALIN LLC**
308 SW First Avenue, Suite 325
Portland, OR 97204
Telephone: (971) 285-7578
Facsimile: (503) 715-5670

Attorneys for Plaintiff
ANGELE GIROUX

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELE GIROUX on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ESSEX PROPERTY TRUST, INC., a Delaware Corporation, doing business as ESSEX PROPERTY, INC. <br><br> Defendant. | Case No. 3:16-cv-01722 <br><br> **CLASS ACTION** <br><br> COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Angele Giroux, on behalf of herself and all others similarly situated, brings this Class Action Complaint pursuant to Fed. R. Civ. P. 23 for injunctive relief and actual and statutory damages against Essex Property Trust, Inc. doing business as Essex Property, Inc. ("Essex"), and alleges as follows:

## I.        INTRODUCTION

1.        This case arises out of a cyber-security breach (the "Data Breach") of Essex's systems that compromised the security of more than 1,500 employees' private, sensitive, and confidential information.

2.	In March 2016, current and former Essex employees learned that they were the victims of a massive data breach resulting in the unauthorized transfer and disclosure of employees' most sensitive, non-public personal identifying information ("PII"), including Social Security numbers, salary and financial information, tax information, first and last names, addresses, and tax form W-2 information.

3.	The employees' information was disclosed to cybercriminals who were able to perpetrate a breach of this depth and scope because Essex failed to maintain reasonable and adequate security measures and protect employees' information from access and disclosure. Essex has obligations, by statute, duty, and otherwise, to protect its employees' employment and personnel records from unauthorized disclosure, dissemination, or access, yet failed to prevent, detect, end, or limit the scope of the Data Breach.

4.	Essex failed to implement reasonable security measures designed to prevent this attack despite warnings from cyber-security and law enforcement professionals of this exact type of cyber-attack and phishing scam. Essex failed to enact security protocols designed to detect the breach and failed to maintain basic security measures, such as access controls; trainings; password protections with appropriate levels of complexity; encryption and other measures that would have prevented the Data Breach or made it more difficult to access or steal employees' information; and, in the event data were accessed or stolen, sufficient encryption rendering it unreadable.

5.	Plaintiff, who brings this proposed class action lawsuit on behalf of all current and former Essex employees whose PII has been compromised (the "Class"), will have to remain vigilant for the rest of her life to combat potential identity theft and tax fraud arising from the

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

staggering amount of personal, financial, and tax information that is now in the hands of identity thieves. Plaintiff and Class members' personal information can never be made private again.

6. As a result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer actual damages and pecuniary losses, including costs associated with mitigating the risk of identity theft, costs for credit monitoring for their lifetime, identity theft insurance, tax fraud consequences, and costs associated with freezing and unfreezing financial and other accounts.

7. Plaintiff, on behalf of the Class, seeks injunctive relief requiring Essex to implement and maintain security practices to comply with regulations designed to prevent and remedy these types of breaches, as well as restitution, damages to compensate them for their current and future losses, and other relief as is appropriate.

## II.    PARTIES

8. Plaintiff, Angele Giroux, is a resident of Washington. She is a current employee of Essex and was employed during the years 2015 and 2016. On March 18, 2016, Plaintiff received notice from Essex of the Data Breach and that her private information, along with every other Essex employees' private information, had been compromised.

9. Defendant, Essex Property Trust, Inc. doing business as Essex Property Inc., is a corporation organized under the laws of Delaware. Essex is a publicly traded company on the New York Stock Exchange and trades under the stock symbol ESS. Essex is a fully integrated real estate investment trust that acquires, develops, redevelops, and manages multifamily apartment communities and conducts business in California and Washington. Essex's headquarters and its principal place of business are in San Mateo, California.

### III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action, the aggregate claims of the putative class members exceed $5 million exclusive of interest and costs, and one or more of the members of the putative class is a resident of a different state than the Defendant.

11. This Court has personal jurisdiction over Essex because Essex maintains its headquarters and principal place of business in San Mateo, California.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because this is a judicial district in which Defendant resides, and where a substantial part of the events or omissions that have given rise to the claims in this lawsuit occurred.

13. Intradistrict Assignment. Pursuant to Civil L.R. 3-2(c) and (d), because this matter arose in San Mateo County, it should be assigned to the San Francisco Division or the Oakland Division.

### IV. FACTUAL ALLEGATIONS

14. Plaintiff is employed by Essex as a Community Manager in charge of one of Essex's multifamily properties called Highlands at Wynhaven located in Issaquah, Washington. She is certified as an Accredited Residential Manager.

15. As a condition of her offer of employment from Essex, Plaintiff, along with every other Essex employee, was required to provide personal identifying information including her

first and last name, address, and Social Security number, and was required to fill out tax forms providing additional confidential information to Essex.

16.     Essex retains this and other confidential information provided by all current and former employees on various computer systems.

17.     In providing their PII to Essex, Plaintiff and all Essex employees have an expectation of privacy and confidentiality in the information that they provide on condition of employment.

18.     Plaintiff and all Essex employees also have an expectation of privacy and confidentiality in their salary information and tax information that is maintained on Essex's systems.

19.     Essex operates residential buildings and employs thousands of people across the western United States.  As a result Essex is well versed in the requirements of confidentiality and obligations to safeguard and not disclose confidential information.

20.     On March 18, 2016, Plaintiff received an electronic-mail message from Essex with the subject line, "Important – Please Read – Technology Breach" ("Notice of Data Breach").

21.     The Notice of the Data Breach indicates that "an Essex employee has fallen victim to a phishing scam."  The notice then describes the following: "As a result of the incident, W-2 tax forms for 2015 were released to unknown persons outside the company.  If you received a form W-2 for the 2015 tax year, we believe you are affected."

22.     The Data Breach actually occurred on March 17, 2016.

23.     As a result of the Data Breach, Essex provided to unauthorized cyber-criminals impersonating company executives Essex employees' most sensitive, non-public personal

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

identifying information referred to commonly in data breach litigation as PII, which included Social Security numbers, salary and financial information, tax information, first and last names, addresses, and other tax form W-2 information.

24.     The improper disclosure of this information affects more than 1,500 Essex employees, all of whom had their confidential PII disclosed without their authorization or consent.

25.     In fact, every employee of Essex in the year 2015, whether they are a current or former employee, had their information improperly disclosed as a result of the Data Breach.

26.     Cyber-attacks of this nature against American corporations are common-place and foreseeable.

27.     In fact, Essex announced previously that it was a victim of a similar cyber-attack just 18-months prior, in September 2014, when cyber-criminals were able to infiltrate Essex's systems and steal the PII of Essex's residents because of inadequate safety measures.

28.     Computer intrusion by cyber-criminals that involves the e-mail impersonation of a high level executive within the corporation sending "phishing" emails to employees of the company in which they request either access to confidential and sensitive information or the transfer of monies occur routinely.

29.     These types of attempted intrusions into the computer systems of corporations are commonly referred to as Business E-mail Compromise Scams ("BEC") and phishing scams.

30.     As a result, law enforcement and cyber-security professionals consistently warn corporations about this exact type of cyber threat and provide best practice guidelines and trainings for preventing, detecting, and dealing with cyber-attacks.

**STUTHEIT KALIN LLC**
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

31.     W-2 and employee PII is highly sought after information by cyber-criminals because that information allows for not only identity theft and future financial wrongs, but fraudulent tax filings under the employees' name. When cyber-criminals obtain this confidential information, it is commonly traded and sold on torrent networks and other unauthorized markets.

32.     This information is at heightened risk at or around the April tax filing deadline as cyber-criminals attempt to file for and/or obtain fraudulent tax refund payments.

33.     The Federal Bureau of Investigation provides updates and notifications of cyber-security threats including warnings about this exact type of threat.

34.     In addition, the United States government and several private security research firms widely distribute reports about new types of malicious cyber-security threats that should, along with its prior data breach, have put Essex on notice that they were at risk.

35.     Despite these and other warnings and having known or should have known of the potential for cyber-security threats, Essex failed to maintain reasonable and adequate security measures to safeguard Plaintiff and its employees' PII.

36.     Given the recent increase of data breaches aimed at American corporations, and the data breach suffered by Essex just 18-months prior, Essex should have adopted, implemented, and maintained security measures to protect its confidential data, including its employees' PII. Instead, Essex failed to adopt, implement, or maintain the necessary security measures and chose instead to remain at risk for cyber-attacks by only implementing minimal and/or perfunctory precautions.

37.     On information and belief, Essex's security practices fell below not only prudent industry standards for prevention, detection, and/or containment of cyber-hacking and computer intrusion, but also traditional, static cyber-attack security standards.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

38.     Essex also failed to maintain or employ reasonable intrusion prevention and detection protocols that would have prevented and immediately detected the breach and disclosure of confidential information as it occurred.

39.     As a result of the Data Breach, Plaintiff and Essex employees have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Essex for the purpose of deriving employment from Essex and with the understanding that Essex would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Essex's possession and is subject to further breaches so long as Essex fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

40.     As a result of Essex's acts and omissions, including its negligent security practices, current and former Essex employees are subject to an increased and concrete risk of identity theft and tax fraud due to the exposure of their personal and financial information, and they will have spent and will have to continue to spend substantial time and money securing their personal information and accounts and protecting their identities.

41.     Identity thieves and cyber-hackers use stolen personal and financial information, including the names, addresses, Social Security numbers, and financial information, to commit fraud and other crimes.  Identity thieves may commit various types of crimes, including immigration fraud, identity theft, false receipt of government benefits, and filing of fraudulent tax return using stolen information to obtain refund payments.

42.     Identity thieves may also commit any number of other frauds, such as obtaining a job, procuring housing or even giving false information to police during an arrest. They can also use victims' personal information to open new financial accounts and incur charges in another person's name, take out loans in another person's name, and incur charges on existing accounts.

43.     Current Essex employees have already fallen victim to identity fraud as a result of the Data Breach, and there is a strong likelihood that additional current and former Essex employees will become victims of identity fraud given the breadth of information about them that has been compromised and is now in the hands of cyber-criminals.

44.     Javelin Strategy & Research reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud." In 2013, "one in three consumers who received notification of a data breach became a victim of fraud." Javelin also found increased

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts, and e-mail payment accounts such as PayPal."

45.     In addition, according to data released just last week from the anti-fraud company iovation, "tax and wage-related fraud was the most common form of identity theft reported to the Federal Trade Commission in 2015," and as a result, the "Internal Revenue Service is taking up to three times longer to review 2015 tax returns compared to past years."

46.     Essex itself recommended through its Notice of Data Breach that current and former Essex employees must not only monitor their accounts and credit, but will also have to pay for credit monitoring or credit reports to make sure their credit and identity is not harmed by thieves. Individuals whose bank information becomes compromised may have to pay fees to their banks for new debit and credit cards, or have to pay fees to have the cards shipped faster so that they do not have to wait weeks to make purchases on their accounts. These individuals may also lose access to their funds and time and money by spending hours on the phone or in person with banks and credit agencies trying to reverse unauthorized charges, clear up credit issues, order new cards, or deal with the devastating effects of tax fraud.

47.     Essex has offered current and former employees twelve months of identity protection services from AllClear ID.  However, credit monitoring cannot prevent identity theft or fraud, even for the twelve month period. Credit monitoring only informs a consumer of instances of fraudulent opening of new accounts. If Essex were to offer identity theft insurance, it only reimburses losses after they have occurred. Neither of those services prevent identity theft or fraud by: (i) detecting sales of PII on underground torrent networks or unauthorized markets before the PII is used to commit identity theft or identity fraud; (ii) monitoring public records, loan data, or criminal records; (iii) flagging existing accounts for fraud in order to thwart identity

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

thieves' use of compromised PII before an unauthorized transaction can be completed; or (iv) freezing credit, which prevents identity thieves' ability to open new accounts or credit with compromised PII.

48.     Plaintiff has already expended time, effort, and financial resources including absence from work in order to begin to deal with the devastating effects of having her most sensitive information compromised and now in the hands of criminals.

49.     The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected, and following the Data Breach, Plaintiff and current and former Essex employees are now at risk for identity theft and tax fraud for the rest of their lives.

50.     Only after Essex suffered this devastating Data Breach at the expense of Plaintiff and Class members -- its second in less than two-year -- did Essex begin to provide warnings to its employees about cyber-attacks.  Ten days after the Data Breach, Essex's Chief Information Officer sent an e-mail to Essex E-Team Members with the subject line "Heightened EMail Awareness" encouraging employees to "be vigilant."  The writing is indicative of Essex's own awareness of "a substantial increase" in "a variety of threats," but also of its incomprehension as it claims that "our network defenses continue to do a solid job."

51.     The cyber-security efforts by Essex continue to fall well short of necessary precautions and industry standards, which has resulted in great harm caused to Plaintiff and Class members.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on her own behalf, as well as on behalf of all other similarly situated individuals.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

53.   Plaintiff's proposed class is defined as follows:

All current and former Essex employees in the United States whose PII was compromised as a result of the cyber-security breach (the "Data Breach") of Essex's systems that compromised employees' private, sensitive, and confidential information.

54.   As enumerated above, Defendants engaged in common acts, practices and policies that violated the Plaintiff's and Class Members' rights. Accordingly, Plaintiff seeks certification of the proposed class under Fed. R. Civ. P. 23.

55.   Plaintiff's claims meet the requirements for certification. There is a well-defined community of interest in the litigation and the Class Members are readily ascertainable.

a.   <u>Numerosity</u>:  The Class is so numerous that joinder of all Class Members is infeasible and impractical.  The membership of each of the class is unknown to Plaintiff at this time.  However, based on Plaintiff's investigation, and on information and belief, the number of Class Members will be greater than 1,500 current and former Essex employees.  The identity of Class Members is readily ascertainable from Essex's employment records.

b.   <u>Typicality</u>: Plaintiff's claims are typical to those of the other Class Members because:

i.   Plaintiff is a member of the Class.

ii.   Plaintiff's claims stem from the same breach, practice or course of conduct that forms the basis of the class claims.

iii.   All of the Class Members' claims are based on the same facts and legal theories.

**STUTHEIT KALIN LLC**
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

iv.     There is no antagonism between Plaintiff's interests and the Class Members, because their claims are for damages provided to each individual employee.

v.     The injuries that Plaintiff suffered are the same or similar to the injuries that the Class Members suffered and continue to suffer, and they are relatively small compared to the expenses and burden of individual prosecutions of this litigation.

c.     <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the Class because:

i.     There is no conflict between Plaintiff's claims and those of the other Class Members.

ii.     Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts or differences with any Class Member.

iii.     Plaintiff agrees to actively participate in the case and protect the interests of the putative Class Members.

iv.     Plaintiff has retained counsel experienced in handling class actions who have already devoted substantial time and resources to investigating the Class Members' claims and who will vigorously prosecute this litigation.

v.     Plaintiff's claims are typical of the claims of Class Members in that their claims stem from the same practice and course of conduct that forms the basis of the class claims.

d.     <u>Superiority</u>:   Class action adjudication is superior to other methods of adjudication for at least the following reasons:

i.      The common questions of law and fact described below predominate over questions affecting only individual members, and the questions affecting individuals primarily involve calculations of individual damages.

ii.     The prosecution of separate actions by the Class Members could either result in inconsistent adjudications establishing incompatible pay practices or, as a practical matter, dispose of the legal claims of Class Members who are not parties to such separate adjudications.

iii.    Individual Class Members would have little interest in controlling the litigation due to the relatively small size of most claims, and because Plaintiff Giroux and her attorneys will vigorously pursue the claims on behalf of the Class Members.

iv.    A class action will be an efficient method of adjudicating the claims of the Class Member employees.

e.    <u>Commonality</u>:  There are questions of law and fact common to the Class Members, which predominate over any issues involving only individual class members, including but not limited to:

i.      Whether Essex had a legal duty to use reasonable security measures to protect class members' PII;

ii.     Whether Essex breached its legal duty by failing to protect class members' PII;

iii.    Whether Essex acted reasonably in securing class members' PII;

iv.    Whether Essex failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of

**STUTHEIT KALIN LLC**
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

records and to protect against known and anticipated threats or hazards to the security and integrity of Class members' PII;

  v. Whether Essex disclosed Class members' PII without their prior written consent;

  vi. Whether Defendant's conduct was willful or with reckless disregard for the security of Class members' PII; and,

  vii. Whether Class members are entitled to actual damages and/or statutory damages; and

  viii. Whether Class members are entitled to declaratory judgment and injunctive relief;

 f. <u>Public Policy Considerations</u>: Employers who fail to protect their employees' confidential information must be held accountable.  The value of individual employee's claims is often small as compared with the relative cost of litigation.  Current employees are often afraid to assert their rights against employers out of fear of retaliation.  Class actions provide putative Class Members who are not named in the Complaint with a type of anonymity that allows for the vindication of their rights while at the same time protection their privacy.

## VI.  CAUSES OF ACTION

### Count One – Negligence

56. Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

57.     Essex owed Plaintiff and Class members a duty to take reasonable steps and security measures to maintain and protect against any dangers to Plaintiff and Class members' PII presented by cyber attackers.  This duty included, among other things, maintaining and testing Essex's cyber security systems, taking reasonable security measures to protect and adequately secure the PII of Plaintiff and Class members from unauthorized access or disclosure, and taking reasonable steps to ensure that hackers did not compromise Plaintiff and Class members' PII.

58.     Essex owed a duty to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate cyber security practices.  It was foreseeable that if Essex did not take reasonable security measures to protect Plaintiff and Class members' PII, which Essex required Plaintiff and Class members to provide as a condition of employment, the PII of Plaintiff and Class members would be subject to cyber-attacks and stolen.

59.     It was foreseeable that Essex's systems would be a target of cyber-attacks and that Essex would be subjected to computer intrusion involving impersonation of a high level executive sending phishing emails to request employee PII.

60.     Employees' W-2 information is highly sought after by cyber criminals because that information allows for not only identity theft and future financial wrongs but fraudulent tax filings under the victims' name.

61.     Since at least 2015, cyber-security and law enforcement professionals have been warning businesses about W-2 phishing scams and computer intrusion involving the impersonation of company executives, including multiple warnings distributed by the Federal Bureau of Investigation.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

62.     Essex has the ability to sufficiently guard against cyber-attacks by implementing adequate measurers to protect current and former Essex employees' PII from unauthorized disclosure or compromise.  The cost borne by Essex to ensure adequate safety measures is insignificant in view of the dangers posed to Plaintiff and Class members by Essex's failure to take reasonable security measures.

63.     In March 2016, Essex announced that it sustained the Data Breach, which occurred on March 17, 2016.  In that breach, cyber attackers were able to access and obtain confidential employee files which compromised the PII of more than 1,500 Essex employees. Essex has admitted that its current and former employees' PII was exposed as a result of the Data Breach.

64.     By failing to implement necessary measures to protect the PII and confidential information Essex maintains on its current and former employees, Essex departed from the reasonable standard of care and breached its duties to Plaintiff and the Class.

65.     But for Essex's failure to implement, maintain, and take adequate security measures to protect the PII of Plaintiff and Class members, the PII of Plaintiff and Class members would not have been stolen, Plaintiff and Class members would not have been injured, and Plaintiff and Class members would not be the victims of and at a heightened risk of identity theft for their lifetime.

66.     Essex's negligence was a substantial factor in causing the harm and injuries to Plaintiff and Class members.  As a direct and proximate result of Essex's failure to exercise reasonable care in implementing and maintaining reasonable cyber security measures, the PII of Plaintiff and Class members was accessed by cyber attackers who can and will use the

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

compromised PII to commit identity theft and tax fraud and various other forms of serious fraud thereby victimizing Plaintiff and Class members.

67.     As a direct and proximate result of Essex's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Essex for the purpose of deriving employment from Essex and with the understanding that Essex would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Essex's possession and is subject to further breaches so long as Essex fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

## <u>Count Two – Breach of Implied Contract</u>

68.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

69.     Essex offered employment to Plaintiff and Class members in exchange for compensation and other employment benefits.  To receive compensation and other employment benefits, Essex required Plaintiff and Class members to provide their PII, including names, addresses, Social Security numbers, and other personal information.

70.     Essex had an implied duty of good faith to ensure that the PII of Plaintiffs and Class members in its possession was only used to provide agreed-upon compensation and other employment benefits from Essex.

71.     Essex was required to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure or use.

72.     Plaintiff and Class members accepted the offer of employment from Essex and fully performed their obligations under the implied contract with Essex by providing their PII to Essex among their other obligations.

73.     Plaintiff and Class members would not have provided their confidential PII to Essex in the absence of their implied contracts with Essex, and would have instead retained the opportunity to control their PII for uses other than compensation and other employment benefits from Essex.

74.     Essex breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiffs' and Class members' PII, which was compromised as a result of the Data Breach.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

75.     Essex's acts and omissions have materially affected the intended purpose of the implied contract requiring Plaintiff and Class members to provide their PII as a condition of employment in exchange for compensation and benefits.

76.     As a direct and proximate result of Essex's breaches of its implied contracts with Plaintiff and Class members, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Essex for the purpose of deriving employment from Essex and with the understanding that Essex would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Essex's possession and is subject to further breaches so long as Essex fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

## <u>Count Three – Invasion of Privacy</u>

77.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

78.    Plaintiff and Class members were required to provide their PII and other confidential personal information to Essex as a condition of their employment.

79.    Essex knew or should have known that the PII of Plaintiff and Class members is private and confidential information and cannot be disclosed to the public without authorization.

80.    Essex therefore had an obligation and duty to safeguard and protect the PII of Plaintiff and Class members from any and all foreseeable attempts to obtain or disclose Plaintiff and Class members' PII to the public without authorization.

81.    As a result of the Data Breach, Plaintiff and Class members' PII, which constitutes private information, was disclosed without authorization to cyber criminals and identity thieves, whom constitute the public.

82.    Essex breached its duty to Plaintiff and Class members, when it sent Plaintiff and Class members' PII to a fake email address, disguised as a company executive's email, resulting in the Data Breach and public disclosure of Plaintiff and Class members' private information.

83.    As a direct and proximate result of Essex's public disclosure of Plaintiff and Class members' private information, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Essex for the purpose of deriving

employment from Essex and with the understanding that Essex would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Essex's possession and is subject to further breaches so long as Essex fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

## Count Four – Declaratory Judgment

84.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

85.     As alleged herein, Plaintiff and Class members have stated claims against Essex based on negligence and other legal theories.

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

86.     Essex has failed to satisfy its obligations to take reasonable steps to maintain and protect against foreseeable dangers to Plaintiff and Class members' PII presented by cyber attackers, as evidenced by the Data Breach.

87.     At all times material hereto, Essex continues to possess and maintain Plaintiff and Class members' PII, and is therefore under a continuing obligation to take reasonable cyber-security measures to maintain and protect against foreseeable dangers to Plaintiff and Class members' PII.

88.     The Data Breach has rendered Essex's systems even more vulnerable to unauthorized access and requires that Essex immediately take even more stringent measures to currently safeguard the PII of Plaintiff and Class members going forward.

89.     An actual controversy has arisen in the wake of the Data Breach regarding Essex's current obligations to provide reasonable data security measures to protect the PII of Plaintiff and Class members.  On information and belief, Essex maintains that its security measures were, and remain, reasonably adequate.  On information and belief, Essex further denies that it previously had or now has any obligation to better safeguard the PII of Plaintiff and Class members.

90.     Plaintiff and Class members thus seek a declaration that to comply with its existing obligations, Essex must implement specific additional, prudent industry security practices, as outlined below, to provide reasonable protection and security to the PII of Plaintiff and Class members.

91.     Specifically, Plaintiffs and the Class seek a declaration that (a) Essex's existing security measures do not comply with its obligations; and (b) to comply with its obligations, Essex must implement and maintain reasonable security measures on behalf of Plaintiff and the

STUTHEIT KALIN LLC
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

Class members, including, but not limited to: (i) engaging third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices including simulated attacks, penetration tests, and audits on Essex's systems on a period basis; (ii) engage third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (iii) auditing, testing, and training its security personnel regarding any new or modified procedures; (iv) purging, deleting and destroying, in a secure manner, employee data not necessary for its business operations; (v) conduct regular database scanning and security checks consistent with prudent industry practices; (vi) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (vii) formulate a policy that limits and encrypts internal access to employee data consistent with prudent industry practices; (viii) receive periodic compliance audits by a third party regarding the security of the computer systems Essex uses to store the personal information of its current and former employees; (ix) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves from further future harm; and (x) provide ongoing identity theft protection, monitoring, tax fraud protection, and recovery services to Plaintiff and Class members for their lifetime.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, as a result of the foregoing, Plaintiff, on behalf of herself and the Class members, pray for relief and judgment against Defendant as follows:

    a.   That this action be certified as a Class Action;

**STUTHEIT KALIN LLC**
308 SW FIRST AVENUE, SUITE 325
PORTLAND, OR 97204

b.  That Plaintiff be appointed as representative of the Class members;

c.  That counsel for Plaintiff be appointed as Class Counsel;

d.  A finding that Essex breached its duty to safeguard and protect the PII of Plaintiff and Class members that was compromised in the Data Breach;

e.  For damages, and all other appropriate legal and equitable relief;

f.  For appropriate injunctive and declaratory relief;

g.  For an award of pre-judgment and post-judgment interest;

h.  For reasonable attorneys' fees and costs; and

i.  For such further relief as this Court may deem just and proper.


## VIII.  DEMAND FOR JURY TRIAL

Plaintiff and Class members hereby demand a trial by jury on all issues so triable.


DATED:  April 5, 2016

### STUTHEIT KALIN LLC

By: _s/ Kyann Kalin_
    Kyann Kalin, SBN 209030

    Attorneys for Plaintiff
    Angele Giroux, on behalf of herself and all
    others similarly situated.