Kyann C. Kalin (CA State Bar No. 209030)
kyann@stutheitkalin.com
**STUTHEIT KALIN LLC**
308 SW First Avenue, Suite 325
Portland, OR 97204
Telephone: (971) 285-7578
Facsimile: (503) 715-5670

Mamta Ahluwalia (CA State Bar No. 245992)
mahluwalia@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
453 S. Spring Street, Suite 1008
Los Angeles, California 90013
Telephone: (213) 259-9950
Facsimile: (213) 477-2391

Donald W. Heyrich (*admitted pro hac vice*)
dheyrich@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA  98101
Telephone: (206) 826-5357
Facsimile: (206) 260-3055

Attorneys for Plaintiff
ANGELE GIROUX

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELE GIROUX on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ESSEX PROPERTY TRUST, INC., a Delaware Corporation, doing business as ESSEX PROPERTY, INC.<br><br>　　　　　　Defendant. | Case No.  4:16-cv-01722- HSG<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:**　　　　**September 20, 2018**<br>**Time:**　　　　**2:00 p.m.**<br>**Courtroom:**　　**2 – 4th Floor**<br><br>**Before the Honorable**<br>**Haywood S. Gilliam, Jr.** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 20, 2018, at 2:00 p.m. or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 2, Oakland, California, Plaintiff Angele Giroux, on behalf of herself and all others similarly situated, will, and hereby does, move this Court to grant final approval of:

1.      The Parties Settlement Agreement;

2.      Settlement payments to the Settlement Class Members; and

3.      The costs and expenses of the Settlement Administrator, Simpluris, Inc.

This Motion is unopposed by Defendant Essex Property Trust, Inc.

This Motion is based upon (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of the Motion; (3) the Declaration of Kyann C. Kalin; (4) the Settlement Agreement; (5) the Declaration of Jarrod Salinas; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement; (8) the records and pleadings, and papers filed in this action together with such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

DATED:  August 16, 2018

**STUTHEIT KALIN LLC**

By: _____*/s/Kyann C. Kalin*_____
Kyann C. Kalin

**HKM EMPLOYMENT ATTORNEYS LLP**

By: _____/s/ Donald W. Heyrich_____
Donald W. Heyrich

Attorneys for Plaintiff Angele Giroux, on behalf of
herself and all others similarly situated

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    FACTS AND PROCEDURE ..................................................................................... 2

       A.    Overview of the Litigation .............................................................................. 2

       B.    Plaintiff's Investigation, and Discovery ......................................................... 4

       C.    The Parties' Arms'-Length Settlement Negotiations ..................................... 5

       D.    The Proposed Class Action Settlement .......................................................... 5

             1.    The Settlement Class............................................................................. 5

             2.    Settlement Benefits .............................................................................. 5

             3.    Release of Claims ................................................................................ 6

             4.    Attorneys' Fees, Litigation Expenses and Service Awards ................. 7

             5.    The Court's Preliminary Approval Order and the Settlement Procedures
                   Following the Order ............................................................................. 7

III.   ARGUMENT ............................................................................................................ 8

       A.    The Court Should Grant Final Approval of the Class Settlement ................... 8

             1.    The Final Approval Standard Has Been Met........................................ 8

             2.    The Settlement Is Reasonable Considering the Strengths and Weakness of
                   Plaintiff's Case .................................................................................. 10

             3.    Given the Risks of Proceeding in Litigation, Settlement is the Most Favorable
                   Outcome ............................................................................................. 11

             4.    The Settlement Amount Supports Approval........................................ 12

             5.    The Settlement Was Finalized After Sufficient Investigation ............ 13

             6.    Experienced Counsel's Opinions Should Be Afforded Substantial Consideration
                   13

             7.    Class Members Have Responded Favorably to the Settlement .......... 14

       B.    The Claims Administrator's Costs Should Be Approved ......................... 15

IV.    CONCLUSION........................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .............................. 10, 11

*Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, (N.D. Cal. 2014)........................................... 11

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010).............................. 15

*Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ................................................................................................................. 12

*Curtis–Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090 (N.D. Cal. 2008) .................. 11

*Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........................................................................................................... 13, 14

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. 2010). ...................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................................ 9, 15

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. 4:09-MD-2046 (S.D. Tex. Dec. 18, 2009).................................................................................................... 13

*In re Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..................................................................................................... 12

*Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ................................................. 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................................... 12

*Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).................... 10, 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................... 10, 12

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................... 15

*Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)................................................................. 14

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................................... 10

*Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014).................................... 14

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)................................... 11

**Other Authorities**

Manual for Complex Litigation § 21.632 (4th ed. 2004)........................................................... 9

**Rules**

Fed. R. Civ. P. 23(e)(2);............................................................................................................. 9

## I.    INTRODUCTION

After this Court granted preliminary approval to the settlement agreement reached by Plaintiff Angele Giroux ("Plaintiff") and Defendant Essex Property Trust, Inc. ("Defendant" or "Essex"), the parties worked in conjunction with Settlement Administrator, Simpluris, Inc., to provide the Court-approved notice to 2,406 class members.  To date there have been 12 total opt-out requests and no objections. [1]

The parties now seek final approval of their settlement agreement.  Under the parties' agreement, Essex will establish a $350,000 settlement fund to be distributed to class members *pro rata* after the payment of administration costs, a service award for plaintiff Angele Giroux, and attorneys' fees and costs. Class Members need not take any action to receive a check for their share of the settlement fund.  Payment will be automatic and without the need to submit a claim.  Essex will also provide Class Members with prospective protection against identity theft in the form of a credit monitoring and identity theft protection service from AllClear ID.  Essex previously made two years of the same service available to Class Members and through this settlement, Class Members will be able to maintain that protection, free of charge, for an additional three years.  This means that affected Class Members will have access to free credit monitoring and identity theft protection for a total of five years after the data breach event.  The AllClear ID credit monitoring and identity theft protection service has a normal retail cost of $14.95 per month.[2]

---

[1] There are also two deficient opt-outs that Essex has requested be excluded as they were not timely submitted.

[2] *See* https://www.allclearid.com/personal/services/monitoring-services/ (retrieved April 18, 2018).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES,
COSTS, AND CLASS REPRESENTATIVE AWARD
(CASE NO. 4:16-CV-01722-HSG) - 1

In exchange for these benefits, Class Members will release their negligence and breach of implied contract claims related to a March 17, 2016 data breach event in which an Essex employee sent an unknown third party the W-2 tax forms for all Essex employees.

The parties' settlement is fair, reasonable, and adequate.  Plaintiff diligently prosecuted her claims for several months on behalf of the class, during which time her counsel investigated her claims and Essex's defenses.  As part of the investigation, Plaintiff's counsel, among other things, culled through a large volume of documents related to the data breach and the actions Essex took in response to the data breach.  Plaintiff's counsel also analyzed the case law in this evolving area of law by researching and reviewing analogous class action data breach litigation.

After weighing the strengths, weaknesses, and uncertainties of her case, Plaintiff engaged in arms'-length negotiations with Essex, reaching a reasonable and fair agreement following negotiations during and after a mediation before the Honorable Eugene F. Lynch.  Now, in light of only a tiny fraction of the class members' decisions to be excluded from the settlement and no objectors to the settlement, the parties request that the Court grant their Motion for Final Approval of Class Action Settlement and also retain its jurisdiction to enforce the Settlement. By separate motion, Plaintiff seeks approval of her Class Representative Service Award, reasonable attorneys' fees, and out-of-pocket litigation costs.

## II.       FACTS AND PROCEDURE

### A. Overview of the Litigation

Defendant Essex Property Trust, Inc. ("Essex") is a real estate investment trust that acquires, develops, redevelops, and manages multifamily apartment communities and conducts business in California and Washington.  Essex's headquarters and its principal place of business are in San Mateo, California.  *See* Dkt. 1 ¶ 9.

1
2
3
4
5
6
7
Plaintiff is a former Essex employee who was employed during the years 2015 and 2016. *See* Dkt. 51 (Second Amended Complaint), ¶ 1.  As a condition of employment, Plaintiff, along with every other Essex employee, was required to provide personal identifying information ("PII") including her first and last name, address, and Social Security number, and was required to fill out tax forms providing additional confidential information to Essex. Essex retains this information.  *Id.* ¶¶ 7, 51-52.

8
9
10
11
12
13
14
15
On March 18, 2016, Plaintiff received notice from Essex of a data breach in which her private information, along with every other Essex employees' private information, was disclosed to a third party engaged in fraud.  Dkt. 51 (Second Amended Complaint) ¶ 1.  Defendant Essex experienced a cyber-security breach when cybercriminals impersonated a company executive and sent a fraudulent ("spoofed" or "phishing") email to a company payroll specialist requesting immediate production of all 2015 W-2 forms for all employees.  On March 17, 2016, the payroll specialist responded by sending 2015 W-2 forms for all of Defendant's employees.  *Id.* ¶¶ 10-15.

16
17
18
19
20
21
On April 5, 2016, Plaintiff instituted this action, alleging, on a class-wide basis, claims for negligence and breach of an implied contract resulting from the March 2016 data breach.[3] Dkt. 1.  Essex answered on June 2, 2016 and filed a Motion to Dismiss on August 31, 2016. Plaintiff filed a First Amended Complaint on October 4, 2016, and on October 21, 2016, Essex filed a Motion to Dismiss the First Amended Complaint.  Dkts. 13; 33; 42; 43.

22
23
24
25
On May 1, 2017, the Court issued an Order Granting Motion to Dismiss.  Dkt. 50. Addressing plaintiff's Article III standing, the Court held that the First Amended Complaint lacked sufficient clarity about the specific harm that Plaintiff has personally suffered and

26
27
---
[3] Plaintiff also alleged claims for invasion of privacy and declaratory judgment, but these claims were subsequently dropped in Plaintiff's Second Amended Complaint.

dismissed with leave to amend with allegations regarding plaintiff's injuries.  On May 26, 2017, Plaintiff filed a Second Amended Complaint detailing the harm that she suffered personally and alleging two legal claims:  negligence and breach of implied contract.  Dkt. 51.  Defendant answered the Second Amended Complaint on July 7, 2017, and the parties moved forward with discovery, including interrogatories, requests for production, and requests for admission.  Dkt. 53.

**B.  Plaintiff's Investigation, and Discovery**

Prior to filing this action, Plaintiff thoroughly investigated her claims, researched the many legal issues in this evolving area of law, and analyzed the court dockets, pleadings, and papers in numerous other factually similar cases across the United States.  In addition, Plaintiff's discovery to Essex has focused on information relevant to proving up her claims and rebutting Essex's defenses. Through discovery, Plaintiff was able to obtain detailed information and documents regarding the data breach, defendant's investigation of the data breach, and all actions taken by defendant in response to the data breach.  Dkt. 63 ¶ 4.  Essex also produced documents showing the negative effects experienced by Essex employees in the wake of the data breach. Finally, Essex provided detailed information regarding the steps it has taken to prevent any similar events from occurring in the future.  *Id.*

As a result of the research, analysis, and investigation, Plaintiff was able to structure a settlement that provides benefits directly to the persons who were affected by the data breach and provides remedies that directly address the harm or potential harm caused to the class.  *See* Class Settlement Agreement ("Settlement Agreement"), pp. 1-2, ¶¶ E, I & J ("Recitals"), attached hereto as Exhibit A to the Declaration of Kyann C. Kalin ("Kalin Decl.").

**C. The Parties' Arms'-Length Settlement Negotiations**

The proposed Settlement was reached after the parties engaged in a thorough analysis of the pertinent facts and law at issue.  On July 7, 2016, the parties attended mediation in San Francisco conducted by the Honorable Eugene F. Lynch of JAMS.  *See* Dkt. 63 ¶ 5.  After several subsequent months of additional discovery and negotiations, the parties were able to reach an agreement on all material terms of the proposed Settlement.  *Id.* ¶¶4-5.  The Settlement Agreement was submitted on April 19, 2018 with Plaintiff's Motion for Preliminary Approval. Dkt. 63, Ex. 1.

**D. The Proposed Class Action Settlement**

**1. The Settlement Class**

The proposed Settlement Class consists of all present and former employees of Essex whose 2015 Form W-2 Wage and Tax Statements were accessed by an unknown person without authorization, by a "phishing" incident on or about March 17, 2016 (2,406 members), during the period from March 17, 2016, through the date of Preliminary Approval.  Settlement Agreement, ¶¶ 1.05 & 1.10.

**2. Settlement Benefits**

Under the Settlement, Essex agrees to pay $350,000 into a settlement fund upon final approval of the Settlement Agreement from which all payments will be drawn.  Settlement Agreement ¶1.33.   All Class Members who have not successfully excluded themselves and who are not Unreachable Class Members, as defined by the Settlement Agreement, will receive a settlement payment, in the form of a check, without having to submit a claim.  *Id.* at ¶ 3.01. Each Class Member will receive a *pro rata* share from the net Settlement Amount (the settlement fund less costs for settlement administration, attorneys' fees and costs, and incentive payments). *Id.*

Essex will also provide all Class Members with three years of credit monitoring and identity theft protection services upon final approval of the Settlement Agreement. *Id.* at ¶3.12. Prior to entering into this settlement, Defendant offered to provide two years of identity theft protection through AllClear to all class members at no cost to the class. Defendant then purchased for those class members who signed up, two years of identity theft protection and insurance through AllClear. Dkt. 73 ¶ 7. This coverage was set to expire in March 2018. However, in conjunction with this settlement, Defendant purchased an additional year of identity theft service for those 1,289 class members who registered for AllClear following the original phishing incident back in March 2016. This insured that those class members already covered by AllClear would not have a lapse in coverage during the settlement approval process. *Id.* at ¶8.

In the event the Settlement receives Final Approval, Essex and/or its applicable insurance carriers will purchase an additional two years of AllClear coverage for those 1,289 class members previously registered for the service. In addition, in conjunction with sending settlement payments to class members, Defendant has agreed to enclose a notice to those class members who have not previously registered for the AllClear service. This notice will inform them they are eligible for three free years of AllClear ID service as a result of the settlement and describe the process for registering for this free service. *Id.* at ¶9.

### 3. Release of Claims

In exchange for the benefits provided by the Settlement, Class Members who have not timely and properly opted out of the settlement will release claims limited to those arising out of or relating to the improper disclosures alleged or asserted in Plaintiff's Complaint. Class Members will fully release and discharge Essex Property Trust, Inc. and the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs,

expenses, attorneys' fees, damages, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the Lawsuit during the Class period, including those claims related to alleged negligence and/or breach.  Settlement Agreement, ¶¶ 4.01-4.04.  Class Members also will expressly acknowledge and agree that they have settled all claims against the Released Parties by and through this Settlement and that they shall not seek any new, different, further, or additional compensation directly or indirectly from Essex Property Trust, Inc. for any alleged failure by Essex to comply with any federal, state, or local law, regulation, or ordinance regarding any matters alleged in the Lawsuit.  *Id*.  This release is appropriately and narrowly tailored to the allegations asserted by Plaintiff in her Complaint.

### 4.  Attorneys' Fees, Litigation Expenses and Service Awards

Through a separate Motion, Plaintiff seeks an order from the Court for Class Counsel to be awarded their reasonable attorneys' fees in the amount of $140,000 and to be reimbursed for out-of-pocket costs totaling $9,500.  Plaintiff also seeks, via that same Motion, an Order from the Court granting an award of $5,000 to Plaintiff Angele Giroux as consideration for her service as a Named Plaintiff and as consideration for the general release she is giving Essex. *See* Dkt. 71.

### 5.  The Court's Preliminary Approval Order and the Settlement Procedures Following the Order

As authorized by the Court's Order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the parties conferred and stipulated to a series of dates related to the class notice and final approval of the settlement.  *See* Dkt. 68; Kalin Decl ¶4.  The schedule provided the dates for the class notice mailing deadline, the filing deadlines for motions for attorneys' fees and costs, incentive payment motions, and final approval, the deadline for class

members to opt-out or object to the settlement, and the date for the final fairness hearing on motions.  Dkt. 70.   The parties engaged the services of a Settlement Administrator, Simpluris, Inc. to (1) email and mail out the Court-approved Notice to the class members; (2) make the Settlement Agreement and Preliminary Approval Order available on the website www.girouxsettlement.com; and (3) re-mail the Notice within five days to the forwarding address, if any, provided by the Postal Service on the face of the returned mail, or return email message.  *See* Settlement Agreement ¶¶ 2.04-2.07.   Simpluris also received and validated requests for exclusions and answered questions from Class Members.    *See* Declaration of Jarrod Salinas ("Salinas Decl.") ¶ 3.

After the Court preliminarily approved the Settlement, Simpluris was provided with the Court-approved Class Notice form, which summarized the key terms of the Settlement Agreement, provided information about the settlement amount, and advised class members how to object to, or opt out from, the Settlement.  *See* Dkt. 67, Ex. A.  On June 13, 2018, Simpluris mailed 2,406 Class Notices to the Class Members.  *See* Class Notice Attached as Exhibit A to Salinas Decl.; Salinas Decl. ¶ 7.  Through the use of advanced address search and research tools, Simpluris was able to locate addresses and re-mail Class Notices for 88 Class Members whose Notices were initially returned as undeliverable.  Ultimately, only 42 Class Members' Notices were undeliverable because Simpluris was unable to locate a current address.  Salinas Decl. ¶ 7. As of August 16, 2018, 12 Class Members out of 2,406 (less than 0.5%) had opted out and no Class Members objected to the Settlement.  *Id.* at ¶¶ 9-10.

### III.    ARGUMENT

**A.  The Court Should Grant Final Approval of the Class Settlement**

    **1.   The Final Approval Standard Has Been Met**

1

2         A class action settlement must be approved by the court and notice of the settlement must

3  be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). The

4  Court approves a class in three steps: (1) preliminary approval of the proposed settlement, and if

   the class has not already been certified, conditional certification of the class for settlement
5
   purposes; (2) notice to the class providing class members an opportunity to object to, or exclude
6
   themselves from, the settlement; and (3) a final fairness hearing concerning the fairness,
7
   adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for
8
   Complex Litigation § 21.632 (4th ed. 2004).
9
          On June 1, 2018, the Court granted preliminary approval of the class action settlement.
10
   Dkt. 68.  On June 13, notice was issued to the class, whereby class members were provided an
11
   opportunity to opt out or object to the settlement and notified of the upcoming fairness hearing.
12
   *See* Ex. A to Salinas Decl.; Salinas Decl. ¶ 7.  Thus, all that remains is the final fairness hearing
13
   and the Court's determination of the fairness, adequacy, and reasonableness of the settlement.
14
          A court will approve a class action settlement at the fairness hearing stage after allowing
15
   Class Members the opportunity to be heard at that hearing, and after determining that the
16
   settlement is "fair, adequate, and reasonable." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
17
   1026 (9th Cir. 1998).  A court's determination as to whether to approve the proposed settlement
18
   is left to the sound discretion of the trial judge and will not be overturned without a finding of
19
   clear abuse of discretion. *Id.* at 1026-27. Proper deference must be given to the private, agreed-
20
   upon decision of the parties. *Id.* at 1027.
21
          In addition, the Ninth Circuit has set forth a list of nonexclusive factors for a district court
22
   to consider when granting final approval, which are "[1] the strength of plaintiffs' case; [2] the
23
   risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining
24

25

26

27

PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
(CASE NO. 4:16-CV-01722-HSG) - 9

class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010)). As discussed below, when weighing these factors, the parties' Settlement is fair, adequate, and reasonable for the Class Members.

### 2. The Settlement Is Reasonable Considering the Strengths and Weakness of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecom. Coop.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.). When assessing the strength of a plaintiff's case and his probability of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  In assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be tested.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. 2010).

Plaintiff and the proposed class would face numerous risks before prevailing on their claims.  Simply stated, the law surrounding data breaches is evolving and uncertain.  In this case,

for example, it is still an open question as to whether plaintiff's injuries satisfy Article III standing. *See, e.g.,* Dkt. No. 43 at pp. 5-11 (defendant's standing arguments in motion to dismiss). Also, if the case were to proceed, there are significant risks on plaintiff's negligence claim, including legal questions concerning defendant's duty of reasonable care and on whether the "economic loss rule" bars plaintiff's negligence claim. *See Id.* at pp. 11-12. Similarly, there are risks that plaintiff's allegations will be found insufficient for an implied contract claim addressing Defendant's alleged failure to safeguard employee data. *See Id.* at pp. 12-13. Finally, there are risks under Fed. R. Civ. P. 23 that the class would not be certified or later will be decertified.

### 3. Given the Risks of Proceeding in Litigation, Settlement is the Most Favorable Outcome

When a Court considers the risks of litigation, it may look to "the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted); *see also Curtis–Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. 2014). In the case, the hurdles to ultimate success on the merits make the outcome of continued litigation uncertain and present "a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).

Here, the Settlement delivers prompt and assured recovery for all Settlement Class Members and avoids the risks and expenses of years' long litigation, including potential interlocutory appeals and an appeal after a trial.  "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Linkedin*, 309 F.R.D. 573, 587 (N.D. CAL 2015) (citing *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *4 (N.D. Cal. 2013)).  This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (order) (recognizing that the inherent risks of trial and appeal support settlement).

### 4.  The Settlement Amount Supports Approval

The Ninth Circuit instructs that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise." *Id.* at 624. Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2nd Cir. 1974)).

The proposed recovery for Settlement Class Members, consisting of monetary relief estimated at approximately $70 per class member, plus the cost of identity theft protection for an additional 3 years (which brings total coverage up to 5 years from the date of the incident), is substantial, especially considering that the identity protection insures class members against losses resulting from the data breach.  *Accord, e.g., In re Countrywide Fin. Corp. Customer Data*

*Sec. Breach Litig.*, 2009 WL 5184352, at *8 (W.D. Ky. Dec. 22, 2009) (payment of some funds, which relief "offers a reasonable resolution that properly addresses the tricky issues presented by data breaches"); *and In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. 4:09-MD-2046, Settlement Agreement, at 13 (S.D. Tex. Dec. 18, 2009) (providing for identity theft losses for an aggregate of four (4) years was sufficient).

### 5.   The Settlement Was Finalized After Sufficient Investigation

A settlement negotiated at an earlier stage in litigation like this one can be approved if a sufficient investigation has been conducted. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014), *appeal dismissed* (Sept. 22, 2014) (finding that despite "discovery [being] limited because the parties decided to pursue settlement discussions early on," counsel had ample information and opportunity to assess the strengths and weaknesses of their claims").

Prior to and during the course of litigation, Counsel for Plaintiff thoroughly investigated Plaintiff's Claims.  Dkt. 72 ¶ 2.  Only after conducting extensive discovery and reviewing documents that detailed the extent and effects of the data breach was Plaintiff able to reach this settlement.  *Id.*; Dkt. 63 ¶¶ 4-6. Plaintiff's counsel believes the terms set forth in the Settlement Agreement are fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances. Dkt. 63, ¶ 14; Dkt. 64 ¶ 9. The risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Essex, warrant settlement, even at this earlier stage.

### 6.   Experienced Counsel's Opinions Should Be Afforded Substantial Consideration

Because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation," the Court should give considerable weight to the parties' settlement. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, experienced counsel had their respective clients approve this settlement after a thorough review of relevant documents and information, as well as a rigorous analysis of the parties' legal claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator.

Plaintiff is represented by experienced class action counsel possessing significant experience in class action matters. *See* Dkt. 63 ¶¶ 7-14; Dkt. 64 ¶¶ 2-9. Likewise, Essex Counsel, Davis Wright Tremaine, is one of the preeminent litigation firms in the country. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (giving credit to counsels' experience and views of and a mediator's involvement in approving a settlement).

Based on the satisfaction of these relevant factors, the Court should find the proposed Settlement to be fair and adequate.

### 7.  Class Members Have Responded Favorably to the Settlement

In evaluating whether to grant final approval of a settlement, a court may "gauge the reaction of other class members" by evaluating "the number of requests for exclusion, as well as the objections submitted." *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014). To date, of the 2,406 notices mailed out to class members, none have objected and only 12 (less than 0.5%) have opted out. *See* Salinas

Decl. ¶¶ 9-10. These small numbers demonstrate that the vast majority of Class Members support the settlement. When, like this one, "the overwhelming majority of the class willingly approved the offer and stayed in the class," this creates some "objective positive commentary as to its fairness." *Hanlon,* 150 F.3d at 1027. *See also Nat'l Rural Tele. Coop.,* 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[T]he absence of a negative reaction [] strongly supports settlement. A total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of [329] members."). "The fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Like the standard for opt-outs, a "lack of objection of the Class Members favors approval of the Settlement." *In re Omnivision Tech., Inc*., 559 F. Supp. 2d 1036, 1043, 1049 (N.D. Cal. 2007). Here, since less than 0.5 percent of the class has opted out and no objections have been received, the response of Class Members to the settlement strongly favors final approval.

**B.  The Claims Administrator's Costs Should Be Approved**

The parties seek final approval of the settlement administration costs incurred by Simpluris. Simpluris acted in accordance with the Settlement Agreement and completed its duties. *See* Settlement Agreement ¶¶ 2.04-2.07; Salinas Decl. ¶¶ 3-8. Simpluris's estimated costs for administering the settlement, including notice and

distribution to over 2,406 class members, is $22,500.  Salinas Decl. ¶ 12.  Accordingly, Simpluris's reasonable costs should be given final approval along with the remainder of the settlement terms.

### IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement on behalf of Class Members. Accordingly, the Parties respectfully request the Court grant final approval of the Settlement Agreement.

DATED: August 16, 2018.

**STUTHEIT KALIN LLC**

By: _____/s/Kyann C. Kalin_____
            Kyann C. Kalin
Attorneys for Plaintiff Angele Giroux, on behalf of herself and all others similarly situated

**HKM EMPLOYMENT ATTORNEYS LLP**

By: _____/s/ Donald W. Heyrich_____
            Donald W. Heyrich

Attorneys for Plaintiff Angele Giroux, on behalf of herself and all others similarly situated