UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELE GIROUX,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ESSEX PROPERTY TRUST, INC.,<br><br>　　　　Defendant. | Case No. 16-cv-01722-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR CLASS COUNSEL ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 71, 74, 78 |

Pending before the Court are two motions in this putative class action dispute. First, Plaintiff Angele Giroux moves the Court for an order granting final approval of the parties' proposed settlement. Dkt. No. 74. Second, Plaintiff moves the Court for an award of attorneys' fees and costs. Dkt. No. 71. Both motions are unopposed. The Court held a final fairness hearing on both motions on September 20, 2018. On October 4, 2018, at the Court's invitation, Plaintiff's counsel submitted a supplemental filing in support of the motion for attorneys' fees. Dkt. No. 78. For the reasons stated below, the Court **GRANTS** final approval. The Court also **GRANTS** Plaintiff's motion for attorneys' fees and costs.

## I. BACKGROUND

### A. Factual Background

Plaintiff Angele Giroux alleges that Defendant, her current employer, experienced a large-scale cybersecurity data breach. Dkt. No. 51 ("SAC") ¶¶ 1, 10–12. As a result of the breach, cybercriminals accessed personal identifying information — including full names, social security numbers, 2015 compensation information, and payroll deduction information — for approximately 2,500 of Defendant's current and former employees. *Id.* ¶¶ 10–12. Defendant notified Plaintiff and the other putative Class Members of the breach in March 2016. *Id.* ¶ 45.

Plaintiff asserts that the data breach resulted from Defendant's failure to implement reasonable security measures to detect and prevent cyber-attacks. *Id.* ¶¶ 19–20.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. Dkt. No. 60. The parties filed the motion for preliminary approval on April 19, 2018. *See* Dkt. No. 62. The Court granted the motion on June 1, 2018. *See* Dkt. No. 68. The Court directed the parties to implement their proposed class notice plan. *Id.* at 11.

On April 19, 2018, the parties submitted a class action settlement agreement that details the provisions of the proposed settlement. *See* Dkt. No. 74-2, Ex. A ("SA"). The key terms of the settlement are as follows:

Class Definition: The Class includes all present and former employees of Essex Property Trust whose 2015 Form W-2 Wage and Tax Statements (W-2 Forms) were accessed by an unknown person without authorization by a "phishing" incident on or about March 17, 2016. SA ¶ 1.05.

Settlement Benefits: Defendant will purchase an additional[1] three years of AllClear credit monitoring and identity protection coverage for all Class Members. SA ¶ 3.13. Defendant will also establish a gross settlement fund consisting of $350,000. SA ¶ 1.33. Each class member will receive a pro rata share from the settlement fund. SA ¶ 3.01. The parties have estimated that individual Class Members' recovery, without including the value of identity theft protection for an additional three years, will be approximately $70. Dkt. No. 74 at 12. The gross settlement fund includes Court-approved attorneys' fees and costs, settlement administration fees, and any additional incentive award to Plaintiff as class representative. SA ¶ 1.33.

Release: The class will release Defendant from all claims against Defendant that arise out of the facts alleged in the complaint and the claims asserted by Plaintiff. SA ¶ 4.02–4.03.

Incentive Award: The named Plaintiff requests an incentive award of $5,000. SA ¶¶ 2.20–

---

[1] Defendant previously purchased two years of credit monitoring for all Class Members in March 2016. SA ¶ 3.12.

2

2.23; Dkt. No. 71 at 11–14.

Attorneys' Fees and Costs: Plaintiff requests attorneys' fees in the amount of $140,000, in addition to costs and expenses in the amount of $9,500. SA ¶¶ 2.18–2.19; Dkt. No. 62 at 7; Dkt. No. 71 at 1.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on June 1, 2018, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 68 at 3–7.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the

United States District Court
Northern District of California

3

proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 68 at 10–11, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, Simpluris, Inc. ("Simpluris"), send class notice via email and U.S. mail to each putative class member, using addresses as provided by Defendant. *Id.* at 2, 10–11. Simpluris states that class notice was provided as directed. Dkt. No. 74-1 ¶¶ 5–11. Prior to sending class notice, Simpluris verified the addresses with the National Change of Address Database. *Id.* ¶ 6. Simpluris performed an advanced address search for any returned Notice Packets. *Id.* ¶ 8. Updated addresses could not be found for forty-two Class Members, even after

4

further tracing efforts. *Id.* Simpluris received no objections to the settlement and only twelve requests for exclusion from the settlement. Dkt. No. 74-1 ¶¶ 9–10. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

Though this action reached settlement before the Court had an opportunity to consider the merits of the claims, the Court finds that the amount offered in settlement is reasonable in light of the strength of the underlying case. Plaintiff concedes that she would face both factual and legal hurdles were she to continue litigating, including establishing Article III standing for individuals whose data has been compromised, and overcoming the argument that the economic loss rule bars any negligence claims. Dkt. No. 62 at 11. When combined with Defendant's apparent willingness to defend against this action, Plaintiff would not be guaranteed a favorable result. In reaching a settlement, however, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4

(favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 2,406 present and former employees of Essex Property Trust presents complex issues that could undermine certification. *See* Dkt. No. 74-1 at 3. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $350,000 settlement amount, in addition to the provision of credit monitoring coverage, falls "within the range of reasonableness" in light of the risks and costs of litigation. Each class member will receive a pro rata share from the settlement fund. The parties have estimated that individual class members' recovery, without including the value of identity theft protection for an additional three years, will be approximately $70.[2] Dkt. No. 74 at 12. This factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Plaintiff was able to reach this settlement only after Plaintiff conducted extensive discovery and reviewed documents that detailed the extent and effects of the data breach. Dkt. No. 74 at 13; Dkt. No. 72 ¶ 2; Dkt. No. 63 ¶¶ 4–6. The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to

---

[2] The Class Action Fairness Act requires "increased judicial scrutiny of coupon settlements." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). Having found no on-point authority to the contrary from the Ninth Circuit, the Court concludes that the in-kind provision of credit monitoring services is not a "coupon," because it has "an intrinsic, tangible value" and is not a discount on future purchases Class Members must make. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 323 (N.D. Cal. 2018) (noting that credit monitoring services included as part of a data breach class action settlement did not amount to a coupon settlement, because "Settlement Class Members need not hand over any more money to obtain the benefits of the Settlement"). The Court therefore evaluates this settlement agreement without the heightened scrutiny required under 28 U.S.C. § 1712(e).

assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each Class Member in accordance with the methods approved by the Court, advised the class of the requirements to object or opt out of the settlement. No objections were received and only twelve class members opted out. *See* Dkt. No. 74 at 1 and n.1. The Court finds that the absence of objections and very small number of opt-outs indicate overwhelming support among the Class Members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

### B. Attorneys' Fees and Costs, Settlement Administrator Costs, and Incentive Award

In its unopposed motion, class counsel asks the Court to approve an award of $140,000 in attorneys' fees and $9,500 in costs. Dkt. No. 71. Class counsel also seeks $22,500 for Simpluris's settlement administration costs and a $5,000 incentive award for the named Plaintiff for her assistance in this case. *Id.*; Dkt. No. 74 at 15–16.

### i. Attorneys' Fees

#### a. Legal Standard

Federal courts sitting in diversity apply state law in determining both a party's right to attorneys' fees and the method of calculating them. *See Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court has held that where a class action suit results in a common fund for the class, the trial court has discretion to apply either the percentage of common fund or the lodestar approach when calculating the fees. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (Cal. 2016).

"The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id.* at 489. "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.* at 489. "The goal under either the percentage or lodestar approach [is] the award of a reasonable fee to compensate counsel for their efforts." *Id.* at 504.

#### b. Discussion

Under the circumstances of this case, the Court finds that the lodestar method is the proper measure of the reasonable fees to be awarded to Plaintiff's counsel. Where, as here, the settlement involves both monetary and non-monetary components, the Court may determine the amount that is "for the benefit of the entire class" before applying a percentage calculation. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *7 (N.D. Cal. Aug. 17, 2018) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). Courts may adjust a common fund amount upward based on non-monetary relief "where the value to individual class members of benefits deriving from [non-monetary] relief can be accurately ascertained." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

The challenge in using the percentage of recovery method in this case is that the settlement

benefits are a hybrid: $350,000 in cash, plus the in-kind provision of credit monitoring services to class members. The Court obviously faces no challenge in valuing the cash component of the settlement. But the actual value of the credit monitoring services to Class Members is not self-evident. It is undisputed that the retail price of the monitoring services to be provided to the "1,289 class members whose coverage will be automatically redeemed upon final approval" is $693,739.80, Dkt. No. 71 at 7, and that the retail price of those services for all 2,394 members of the class is over $1.2 million, Dkt. No. 78 at 1. On the other hand, it is also undisputed that Defendant is paying the monitoring provider a drastically discounted "bulk rate" of approximately $80,000 to provide the services. Dkt. No. 78 at 9. Moreover, because Class Members are not being offered a choice between a cash component or the continuation of monitoring services, it is difficult to know what value they actually attach to a benefit that from their perspective is being provided for free.

For all of these reasons, the Court is not inclined to apply the percentage of recovery method as though this case involved a $1.6 million settlement fund. The Court simply does not view the retail value of the in-kind services being provided to Class Members as equivalent to a settlement fund containing the corresponding amount of cash. As this case illustrates, a settling defendant can obtain such services at far less than face value, paying a fraction of what it would contribute if it put the cash value of the retail price into a settlement fund. If Defendant is not willing to pay over a million dollars based on the sticker price of the services, the Court questions why it should value them that way in assessing the percentage of recovery.

All of this being said, it is clear that Plaintiff's counsel's efforts achieved a benefit worth at least $430,000 for the class ($350,000 cash plus the $80,000 bulk price of the monitoring services), and likely worth somewhat more than that. The Court finds this benefit to be substantial, and Plaintiff's counsel deserves fair compensation for achieving a positive result.

Taking all of these factors into account, the Court finds in its discretion that the lodestar-based fee request submitted by Plaintiff's counsel is reasonable. Class counsel requests $140,000 in fees, having spent a combined 266.2 hours on this case. *See* Dkt. No. 72 ¶¶ 12–16; Dkt. No. 73 ¶ 3. Class counsel thus is seeking fees lower than their aggregate lodestar of $151,977.50. *See*

9

Dkt. No. 71 at 10. The Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See* Dkt. No. 72 ¶¶ 6, 12 ($685 per hour with 25 years of experience); Dkt. No. 73 ¶¶ 3, 12 ($550 per hour with 18 years of experience). *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (approving class counsel's hourly rates between $335 and $685 in a data breach litigation as reasonable and appropriate); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.")

Having reviewed the time class counsel spent litigating this action, the Court notes that counsel worked efficiently and diligently to reach this result. *See* Dkt. No. 72, Ex. A; Dkt. No. 73, Ex. A. Defendant vigorously litigated this action, denying liability and the appropriateness of class certification. As discussed above, Plaintiff faced both factual and legal hurdles. Class counsel, therefore, assumed substantial risk in litigating this action on a contingency fee basis. Class counsel also obtained significant results for the class: under the settlement agreement, individual Class Members will receive on average approximately $70 in addition to the credit-monitoring services. Dkt. No. 71 at 13. The Court finds that class counsel's requested fees are reasonable in light of the results achieved for the class and the work performed, and finds that the requested award is appropriate. The Court accordingly **GRANTS** class counsel's motion for attorneys' fees in the amount of $140,000.

### ii. Attorneys' Costs

Class counsel seeks reimbursement of $9,500 in out-of-pocket costs. *See* Dkt. No. 71 at 10–11. Class counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

Plaintiff has submitted Mr. Donald Heyrich's and Ms. Kyann Kalin's declarations explaining that they incurred $8,698.64 in litigation-related costs and expenses, including:

(1) service fees; (2) travel; and (3) mediation expenses. *See* Dkt. No. 73, Ex. C; Dkt. No. 72, Ex. B. At the time of filing, Plaintiff counsel anticipated an additional $800 in costs related to final approval. Dkt. No 71 at 11. The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $9,498.64.

### iii. Settlement Administration Costs

Class counsel seeks $22,500 for the costs of class administration conducted by Simpluris. Dkt. No. 74 at 15–16; Dkt. No. 74-1 ¶¶ 11–12. Simpluris' duties included:

> (a) printing, emailing, and mailing the Notice of Class Action Settlement ("Class Notice") (b) receiving undeliverable Notice Packets; (c) posting an informational website; (d) receiving and validating requests for exclusion; (e) and answering questions from Class Members. If the Court grants final approval of the Settlement, Simpluris will be responsible, among other things, for: (f) calculating individual settlement payments, distributing funds, and tax-reporting following final approval; (g) mailing settlement checks.

Dkt. No. 74-1 ¶ 3.

The class notice informed class members that individual awards would reflect a deduction for settlement administration costs, and noted that the estimated individual cash amount would be approximately $70 after all deductions, *see id.*, Ex. A at 3–4, and no Class Member objected. Courts regularly award administrative costs associated if notice is provided to the class. *See, e.g.*, *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *11 (N.D. Cal. May 19, 2016); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). Given the scope of Simpluris' administrative duties in this case, the Court concludes that its costs were reasonably incurred for the benefit of the class and **GRANTS** the full amount of $22,500.

### iv. Incentive Award

Class counsel requests a service award of $5,000 for named Plaintiff. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

11

private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotation omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

The Court finds that a $5,000 service award is reasonable to compensate Plaintiff given her contribution to this case. Plaintiff was closely involved in the case, communicating frequently with class counsel, reviewing documents, and participating in settlement strategy and decision-making. Dkt. No. 71 at 13–14. Moreover, a $5,000 incentive award is not unduly disproportionate to Class Members' anticipated recovery. Based on the facts presented, including the named Plaintiff's substantial contributions to the class, class counsel's request for an incentive award is **GRANTED** in the amount of $5,000 for the named Plaintiff.

\* \* \*

### III. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**. Payment to Class Members who have not previously registered for ALLCLEAR Identity Protection shall include the proposed Notice of Availability of Identity Protection, Dkt. No. 75-1, in the envelope with the settlement check.

2. Plaintiff's Motion for class counsel's Attorneys' Fees and Costs is hereby **GRANTED**.

3. The Court approves the settlement amount of $350,000, including payments of

attorneys' fees in the amount of $140,000; costs in the amount of $9,498.64; claims administration fees in the amount of $22,500; and an incentive fee for the named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a stipulated final judgment by March 29, 2019.

**IT IS SO ORDERED.**

Dated: 3/14/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

13