UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELE GIROUX,<br><br>    Plaintiff,<br><br>v.<br><br>ESSEX PROPERTY TRUST, INC.,<br><br>    Defendant. | Case No. 16-cv-01722-HSG<br><br>**ORDER AMENDING FINAL APPROVAL ORDER AND GRANTING STIPULATED FINAL JUDGMENT**<br><br>Re: Dkt. Nos. 87, 88 |

The Court previously approved the parties' proposed settlement on March 14, 2019, along with the parties' motion for attorneys' fees and costs. Dkt. No. 80 ("Final Approval Order"). On May 10, 2019, the parties filed a stipulation asking the Court to amend its Final Approval Order due to a change in the vendor retained to provide the identity protection services to class members (Equifax, Inc. rather than AllClear). Dkt. No. 87. The parties also filed a stipulated entry of final judgment. Dkt. No. 88. For the reasons stated below, the Court **GRANTS** the parties' stipulation to amend the Final Approval Order and hereby sets forth the terms of the Amended Final Approval Order.[1] The Court also **GRANTS** the parties' stipulated entry of final judgment, based on the terms set forth in the Final Approval Order and as modified by this Amended Final Approval Order. Because the only fact that has changed since the Court approved the settlement on March 14, 2019 is the vendor for the identity protection services, this Amended Final Approval Order incorporates the Court's prior analysis, as set forth in the Final Approval Order. *See* Dkt. No. 80.

---

[1] This Amended Final Approval Order does not affect the Court's order on the motion for attorneys' fees and costs, settlement administrator costs, and incentive award, as set forth in Section II(B) of the Final Approval Order. *See* Dkt. No. 80 at 7–12.

## I. BACKGROUND

### A. Factual Background

Plaintiff Angele Giroux alleges that Defendant, her current employer, experienced a large-scale cybersecurity data breach. Dkt. No. 51 ("SAC") ¶¶ 1, 10–12. As a result of the breach, cybercriminals accessed personal identifying information — including full names, social security numbers, 2015 compensation information, and payroll deduction information — for approximately 2,500 of Defendant's current and former employees. *Id.* ¶¶ 10–12. Defendant notified Plaintiff and the other putative Class Members of the breach in March 2016. *Id.* ¶ 45. Plaintiff asserts that the data breach resulted from Defendant's failure to implement reasonable security measures to detect and prevent cyber-attacks. *Id.* ¶¶ 19–20.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. Dkt. No. 60. The parties filed the motion for preliminary approval on April 19, 2018. *See* Dkt. No. 62. The Court granted the motion on June 1, 2018. *See* Dkt. No. 68. The Court directed the parties to implement their proposed class notice plan. *Id.* at 11.

On April 19, 2018, the parties submitted a class action settlement agreement that details the provisions of the proposed settlement. *See* Dkt. No. 74-2, Ex. A ("SA"). The Court held a final fairness hearing on September 20, 2018, and approved the settlement on March 14, 2019. Dkt. Nos. 77, 80. The parties then notified the Court that AllClear, the vendor that had previously agreed to provide identity protection services under the settlement agreement, would no longer be providing those services. Dkt. No. 87. The parties were able to secure an alternative vendor. *Id.* The key terms of the settlement are as follows:

<u>Class Definition</u>: The Class includes all present and former employees of Essex Property Trust whose 2015 Form W-2 Wage and Tax Statements (W-2 Forms) were accessed by an unknown person without authorization by a "phishing" incident on or about March 17, 2016. SA ¶ 1.05.

<u>Revised Settlement Benefits</u>: Defendant initially agreed to purchase an additional three

years of AllClear credit monitoring and identity protection coverage for all Class Members. SA ¶ 3.13. Defendant previously purchased two years of credit monitoring for all Class Members in March 2016. *Id.* ¶ 3.12. However, on March 25, 2019, after the Court granted final approval of the settlement, AllClear informed Defendant that it had been acquired by Experian and would not provide the credit monitoring and identity protection services. Dkt. No. 87 at 2. Therefore, the parties arranged for an alternative vendor, Equifax, to provide the entire class with three years of identity protection coverage, commencing from the date each Class Member enrolls with Equifax. *Id.* at 3.

Defendant will also establish a gross settlement fund consisting of $350,000. SA ¶ 1.33. Each class member will receive a pro rata share from the settlement fund. SA ¶ 3.01. The parties have estimated that individual Class Members' recovery, without including the value of identity theft protection for an additional three years, will be approximately $70. Dkt. No. 74 at 12. The gross settlement fund includes Court-approved attorneys' fees and costs, settlement administration fees, and any additional incentive award to Plaintiff as class representative. SA ¶ 1.33.

<u>Release</u>: The class will release Defendant from all claims against Defendant that arise out of the facts alleged in the complaint and the claims asserted by Plaintiff. SA ¶ 4.02–4.03.

<u>Incentive Award</u>: The named Plaintiff requests an incentive award of $5,000. SA ¶¶ 2.20–2.23; Dkt. No. 71 at 11–14.

<u>Attorneys' Fees and Costs</u>: Plaintiff requests attorneys' fees in the amount of $140,000, in addition to costs and expenses in the amount of $9,500. SA ¶¶ 2.18–2.19; Dkt. No. 62 at 7; Dkt. No. 71 at 1.

**II. ANALYSIS**

    **A. Amended Final Settlement Approval**

        **i. Class Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on

3

June 1, 2018, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 68 at 3–7.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including

4

individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 68 at 10–11, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, Simpluris, Inc. ("Simpluris"), send class notice via email and U.S. mail to each putative class member, using addresses as provided by Defendant. *Id.* at 2, 10–11. Simpluris states that class notice was provided as directed. Dkt. No. 74-1 ¶¶ 5–11. Prior to sending class notice, Simpluris verified the addresses with the National Change of Address Database. *Id.* ¶ 6. Simpluris performed an advanced address search for any returned Notice Packets. *Id.* ¶ 8. Updated addresses could not be found for forty-two Class Members, even after further tracing efforts. *Id.* Simpluris received no objections to the settlement and only twelve requests for exclusion from the settlement. Dkt. No. 74-1 ¶¶ 9–10. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

5

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

Though this action reached settlement before the Court had an opportunity to consider the merits of the claims, the Court finds that the amount offered in settlement is reasonable in light of the strength of the underlying case. Plaintiff concedes that she would face both factual and legal hurdles were she to continue litigating, including establishing Article III standing for individuals whose data has been compromised, and overcoming the argument that the economic loss rule bars any negligence claims. Dkt. No. 62 at 11. When combined with Defendant's apparent willingness to defend against this action, Plaintiff would not be guaranteed a favorable result. In reaching a settlement, however, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

#### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 2,406 present and former employees of Essex Property Trust presents complex issues that could undermine certification. *See* Dkt. No. 74-1 at 3. Accordingly, this factor also weighs in favor of settlement.

#### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $350,000 settlement amount, in addition to the provision of credit monitoring coverage, falls "within the range of reasonableness" in light of the risks and costs of litigation. Each class member will receive a pro rata share from the settlement fund. The parties have

1  estimated that individual class members' recovery, without including the value of identity theft
2  protection for an additional three years, will be approximately $70.[2] Dkt. No. 74 at 12. This
3  factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Plaintiff was able to reach this settlement only after Plaintiff conducted extensive discovery and reviewed documents that detailed the extent and effects of the data breach. Dkt. No. 74 at 13; Dkt. No. 72 ¶ 2; Dkt. No. 63 ¶¶ 4–6. The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each Class Member in accordance with the methods approved by the Court, advised the class of the requirements to object or opt out of the settlement. No objections were received and only twelve class members opted out. *See* Dkt. No. 74 at 1 and n.1. The Court finds that the absence of objections and very small number of opt-outs indicate

---

[2] The Class Action Fairness Act requires "increased judicial scrutiny of coupon settlements." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). Having found no on-point authority to the contrary from the Ninth Circuit, the Court concludes that the in-kind provision of credit monitoring services is not a "coupon," because it has "an intrinsic, tangible value" and is not a discount on future purchases Class Members must make. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 323 (N.D. Cal. 2018) (noting that credit monitoring services included as part of a data breach class action settlement did not amount to a coupon settlement, because "Settlement Class Members need not hand over any more money to obtain the benefits of the Settlement"). The Court therefore evaluates this settlement agreement without the heightened scrutiny required under 28 U.S.C. § 1712(e).

overwhelming support among the Class Members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

### III. CONCLUSION

After considering and weighing the above factors, the Court finds that the settlement agreement, as modified with the new vendor for the identity protection services, is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, the parties' stipulation to amend the Final Approval Order is **GRANTED**. The settlement administrator is directed to send the revised Notice of Availability of Identity Protection, Dkt. No. 87, Ex. A, to all Class Members in conjunction with the mailing of the settlement payment.

It is further ordered that the parties' stipulation of entry of final judgment is **GRANTED**. The parties and settlement administrator are directed to implement this Amended Final Approval Order and the settlement agreement in accordance with the terms of the settlement agreement and this Amended Final Approval Order. This order terminates Docket Number 87. The Clerk is **DIRECTED** to file Docket Number 88, the stipulated final judgment, and close the case.

**IT IS SO ORDERED.**

Dated: 5/14/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge